**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | |
|---|---|
| CANDICE LEIGH STOXREITER, INDIVIDUALLY AND AS GUARDIAN OF NATE GABRIEL STOXREITER AND TAYE HOPE STOXREITER, MINOR CHILDREN, AND ARTHUR CHANNON AS EXECUTOR OF THE ESTATE OF MARK STOXRETER, DECEASED  Plaintiffs | § § § § § § § § |
| v. | § § |
| BELL TEXTRON, INC. F/K/A BELL HELICOPTER TEXTRON, INC.  Defendant | § § § §   JURY DEMANDED |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

COME NOW, Plaintiffs, Candice Leigh Stoxreiter, Individually and as Guardian of Nate Gabriel Stoxreiter and Taye Hope Stoxreiter, Minor Children, and Arthur Channon as Executor of the Estate of Mark Stoxreiter (collectively referred to herein as "Plaintiffs"), complaining of Defendant Bell Textron, Inc. f/k/a Bell Helicopter Textron, Inc. ("Bell"). For good and sufficient cause of action, Plaintiffs would respectfully show unto this Honorable Court the following:

**I. PARTIES**

1.   Plaintiffs Candice Leigh Stoxreiter, Individually and as Guardian of Nate Gabriel Stoxreiter and Taye Hope Stoxreiter, Minor Children are citizens of South Africa. Plaintiffs are the surviving spouse and children of Mark Stoxreiter, who died unexpectedly on January 21, 2021, when the medical helicopter he was piloting crashed in South Africa. At the time of his death, Mark Stoxreiter was a citizen of South Africa.

2. Arthur Channon as the Executor of the Estate of Mark Stoxreiter is a citizen of South Africa. A probate proceeding was commenced in South Africa and Arthur Channon was duly appointed as the executor of the Estate of Mark Stoxreiter, deceased.

3. Defendant BELL TEXTRON, INC. formerly known as BELL HELICOPTER TEXTRON, INC. is a for-profit corporation that was incorporated in the state of Delaware, is doing business in the United States, including Texas, and has its principal place of business in Fort Worth, Texas. Service on Bell may be had by serving its registered agent, Chandria Mercer, at 3255 Bell Flight Boulevard, Fort Worth, Texas 76118.

4. As it relates to the event giving rise to this Complaint, Plaintiffs invoke the right to institute this suit against any entity that was conducting business using the assumed or common names of Bell. Plaintiffs respectfully request the Court order Bell to substitute its true name if different from the names stated herein.

## II. JURISDICTION AND VENUE

5. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and citizens or subjects of a foreign state. Plaintiffs are citizens of South Africa. Prior to his death, Mark Stoxreiter was a citizen of South Africa, and the executor of his estate, Arthur Channon, is a citizen of South Africa. Defendant Bell was incorporated in the state of Delaware and has its principal place of business in Fort Worth, Texas. Furthermore, the Court has jurisdiction over this matter because the amount in controversy falls within the minimum jurisdictional limits of this Court as Plaintiffs sue for ten million dollars ($10,000,000.00).

6.Pursuant to 28 U.S.C. § 1391(b), (c)(2) and (d), venue is proper in the Southern District of Texas because the Court has personal jurisdiction over Bell and Bell has sufficient contacts with the Southern District to maintain personal jurisdiction over Bell.

7.Maintaining this action in the Southern District of Texas will: 1) allow ease of access to sources of proof; 2) subpoena non-party fact witnesses; 3) minimize the cost of attendance for willing witnesses; and 4) reduce other practical problems that make the trial of a civil action easy, expeditious and less expensive.

8.In addition, the Southern District of Texas will: 1) not have administrative difficulties due to court congestion; 2) have an interest in deciding the matters set forth in this civil action; 3) be familiar with the causes of action and defenses; and 4) not encounter unnecessary problems of conflict of laws or in the application of foreign law.

### III. FACTUAL ALLEGATIONS

9.On or about January 1, 2021, a Bell helicopter (model Bell430, registration number ZT-RRT)(the "Helicopter") piloted by Mark Stoxreiter and carrying four (4) passengers, crashed in South Africa during an emergency flight.  All passengers, including Mark Stoxreiter, were killed.

10.At the time of the crash, Mark Stoxrieter was working as a pilot for Netcare 911, which is a company providing medial flight services on the Helicopter.

11.The weather did not cause or contribute to the crash or the deaths of the individuals on the Helicopter, nor did Mark Stoxtrieter's education, training, experience or pilot performance. A defective main rotor pitch link clevis, blades, and bearings caused the Helicopter to crash. In addition, without limitation, Bell failed to: 1) issue adequate inspection and maintenance recommendations related to the operation and main rotor components replacement, in particular

for the main rotor pitch link clevis for the blades and the respective universal bearings; 2) issue adequate time margin recommendations for maintenance and replacement of the main rotor pitch link clevis and universal bearings; 3) issue adequate Non Destructive Tests (NDT) recommendations to be performed on the main rotor pitch link clevis and universal bearings; and 4) issue adequate safety recommendations that make possible the identification of eventual evidences of the main rotor pitch link clevis and universal bearing malfunctioning and respective tolerance margins.

12. Bell was in the business of designing, manufacturing, fabricating, converting, maintaining, repairing, modifying, designing, assembling, distributing, certifying, testing, selling, inspecting, servicing, repairing, marketing, warranting, and advertising helicopters, including the Helicopter involved in the crash.

13. The Helicopter, including its component parts, was in substantially the same condition that it was in when it left the manufacturer and the manufacturer's representatives. The Helicopter had not been materially changed or altered from the time that it was manufactured, delivered, and certified airworthy by Bell.

14. Bell wrote, issued and/or approved service manuals, instructions, letters, bulletins, notices, advisories, and warnings for the Helicopter, and in some cases failed to issue such instructions, letters, bulletins, notices, advisories, and warnings, and established maintenance manuals, maintenance instructions, service bulletins, inspection schedules and service life schedules for the Helicopter, as alleged herein.

15. Bell knew, or in the exercise of reasonable care should have known, that its Helicopter would be used in the same manner for which it was designed and manufactured, for the

carriage and transportation by air of crew and passengers and would be used according to the manuals and instructions published by Bell.

16. Plaintiffs are further informed and believe and allege that the fatal failures and the crash were the result of the defective design, manufacture, warning, testing, inspection, and assembly of the Helicopter.

17. Mark Stoxreiter, as the pilot of the Helicopter, was aware that he had been placed in imminent and hopeless peril and he apprehended the grave and dire circumstances in which he had been thrust. As a result of the crash, Mark Stoxrieter suffered pre-impact horror, fear and terror, pre-death horror, fear and terror, pain and suffering, physical injury and otherwise fatal injuries in a personal and pecuniary manner.

18. Plaintiffs as the spouse and children of Mark Stoxreiter have suffered from the death of their loved one. Plaintiffs have suffered loss of household income, service, consortium, support, advice, maintenance, mental anguish, comfort camaraderie, companionship, love, and inheritance. Plaintiffs have sustained economic and non-economic damages, funeral and burial expenses, and all other damages available by law.

19. Plaintiffs respectfully request the opportunity to engage in discovery and amend this Complaint should additional information become available.

## IV. CAUSE OF ACTION AGAINST BELL

**A. NEGLIGENCE**

20. Plaintiffs incorporate by reference the facts and allegations in the preceding paragraphs, as if set forth fully herein.

21. On or about January 21, 2021, Mark Stoxreiter died due to the wrongful acts, neglects and/or defaults of Bell, its employees, and agents. At all times material hereto, Bell owed Plaintiffs a duty of reasonable care.

22. At all relevant times, it was the duty of Bell, including their officers, agents and employees, to exercise ordinary care in the design, testing, manufacture, assembly, inspection, certification, sale, distribution, maintenance, repair, servicing, developing and issuing instructions, advisories, and warnings, including service intervals, inspection intervals and life limits regarding the Helicopter and its components, including the main rotor pitch link clevis and universal bearings, so as not to cause injury to or the death to those who used its products.

23. Notwithstanding these duties, Bell breached its duties in the design, testing, manufacture, assembly, certification, inspection, sale, lease, distribution, maintenance, repair, servicing, developing and issuing instructions, advisories, and warnings, including service intervals, inspection intervals and life limits regarding the Helicopter and its components, including the main rotor pitch link clevis and universal bearings.

24. Bell was negligent in the design, manufacture, distribution of the Helicopter and its components, including the main rotor pitch link clevis and universal bearings, by utilizing a design and materials prone to premature fracture and failure of certain components during normal and foreseeable operations. The fractures and failure mode would not have been detected in the ordinary course of pre-flight inspections, pursuant to the Bell maintenance manuals, or otherwise.

25. Bell, as the designers, manufacturers, or distributors of the Helicopter, had a duty to provide adequate warnings, instructions, training materials, advisories, and maintenance and inspection procedures and intervals to ensure safe operation of the Helicopter in normal flight, and it failed in that duty.

26. Bell was required to provide certain warnings, instructions, training materials, advisories, and maintenance, and inspection intervals and procedures to operators of the Helicopter to enable them to determine the airworthiness and proper operation of the Helicopter. Bell failed to warn, instruct, train and/or issue adequate advisories, maintenance and inspection procedures and other instructions regarding such dangers and/or issued inadequate advisories, warnings, instructions, training materials, and maintenance and inspection procedures and intervals.

27. On or about January 1, 2021, as a direct and proximate result of one or more negligent acts or omissions of Bell, the Helicopter suffered a catastrophic failure in flight that resulted in the crash and the death of the occupants in the Helicopter.

28. Mark Stoxreiter was aware that he had been placed in imminent and hopeless peril and he apprehended the grave and dire circumstances in which he had been thrust. As a result, the Estate of Mark Stoxreiter is entitled to recover for his conscious pain and suffering, mental anguish, and funeral expenses.

29. As a direct and proximate cause of the conduct of Bell, Plaintiffs have suffered damages including loss of household income, service, consortium, support, advice, maintenance, mental anguish, comfort, camaraderie, companionship, love, and inheritance.

## B. STRICT LIABILITY FOR DEFECTIVE PRODUCT

30. Plaintiffs incorporate by reference the facts and allegations in the preceding paragraphs, as if set forth fully herein.

31. Bell designed, manufactured, fabricated, converted, maintained, repaired, modified, designed, assembled, distributed, certified, sold, inspected, serviced, repaired, marketed, warranted, provided certain warnings, instructions, training materials, advisories, and

maintenance, and inspection intervals and procedures to operators, and advertised the Helicopter, and each and every component part thereof.

32. Bell was required to design the Helicopter, including all service, maintenance and operations manuals so that it was free from design and manufacturing defects, and was required to design and manufacture a helicopter that would not fail in flight.

33. Bell was required to provide certain warnings, instructions, training materials and maintenance, and inspection intervals and procedures to operators of the Helicopter to enable them to determine the airworthiness and proper operation of the Helicopter. Bell failed to warn, instruct, train and/or issue adequate advisories, maintenance and inspection procedures, and other instructions regarding such dangers and/or issued inadequate advisories, warnings, instructions, training materials, and maintenance and inspection procedures and intervals.

34. The Helicopter was capable of causing, and in fact did cause, personal injury and death to users and consumers while being used in a manner reasonably foreseeable, thereby rendering the Helicopter unsafe and dangerous for use by any user or consumer.

35. On or about January 21, 2021, the Helicopter was being used for the purposes and in the manner for which it designed and manufactured, and in a manner that was reasonably foreseeable to Bell. The Helicopter was in the same condition without significant change from the original condition when sold and delivered by Bell.

36. The Helicopter was defective, not fit for its intended purpose and was unreasonably dangerous by reason of defective design, manufacture, testing, certification, maintenance, repair, modification, assembly, service, inspection, warning, instruction, advisories, and sale on the part of Bell.

37. As a direct result of defects in Bell's design, manufacture, testing, certification, maintenance, repair, modification, assembly, service, inspection, warning, instruction and sale, the Helicopter, and each and every component part thereof, contained defects, causing the Helicopter to crash. Bells manufacture and warnings concerning the main rotor pitch link clevis and universal bearings were deficient.

38. The defects in the Helicopter and the conduct of Bell were a producing cause of Mark Stoxreiter's death, and as a result, Plaintiffs were injured and damaged as alleged herein.

39. On or about January 1, 2021, as a direct and proximate result of one or more negligent acts or omissions of Bell, the Helicopter suffered a catastrophic failure in flight that resulted in the crash and the death of the occupants in the Helicopter.

40. Mark Stoxreiter was aware that he had been placed in imminent and hopeless peril and he apprehended the grave and dire circumstances in which he had been thrust. As a result, the Estate of Mark Stoxreiter is entitled to recover for his conscious pain and suffering, mental anguish, and funeral expenses.

41. As a direct and proximate cause of the conduct of Bell, Plaintiffs have suffered damages including loss of household income, service, consortium, support, advice, maintenance, mental anguish, comfort, camaraderie, companionship, love, and inheritance.

## C. BREACH OF WARRANTY

42. Plaintiffs incorporate by reference the facts and allegations in the preceding paragraphs, as if set forth fully herein.

43. At the time the Helicopter was certified, sold, serviced and delivered, through and including January 21, 2021, Bell expressly and/or impliedly warranted and represented that the Helicopter, including its instructions and warnings, were airworthy, of merchantable quality, fit

and safe for the purposes for which it was designed, and free from defects. Bell further warranted that the instructions, warnings, and maintenance and inspection procedures and intervals regarding the Helicopter were adequate.

44. Plaintiffs are informed, believe and allege that at the time the Helicopter was sold, certified and delivered, through the date of the crash, Bell breached its warranties in that the Helicopter was defective, not airworthy, not of merchantable quality, not fit and safe for the purpose for which it was designed, manufactured, assembled, inspected, tested, sold, certified, serviced, repaired, maintained, and intended to be used. Bell further breached said warranties in that the instructions, warnings, and maintenance and inspection procedures and intervals were not adequate. Bells manufacture and warnings concerning the main rotor pitch link clevis and universal bearings were deficient.

45. Plaintiffs are informed, believe and allege that on the day of the crash, Mark Stoxrieter was an intended beneficiary of the warranties extended by Bell.

46. On or about September 26, 2016, as a direct and proximate result of the foregoing breach of warranties, the Helicopter failed in flight and crashed, killing Mark Stoxreiter, and as a result, Plaintiffs were injured and damaged as alleged herein.

47. Mark Stoxreiter was aware that he had been placed in imminent and hopeless peril and he apprehended the grave and dire circumstances in which he had been thrust. As a result, the Estate of Mark Stoxreiter is entitled to recover for his conscious pain and suffering, mental anguish, and funeral expenses.

48. As a direct and proximate cause of the conduct of Bell, Plaintiffs have suffered damages including loss of household income, service, consortium, support, advice, maintenance, mental anguish, comfort, camaraderie, companionship, love, and inheritance.

**D. VICARIOUS LIABILITY**

49. At all times material hereto, Bell is vicariously liable in all respects for the torts of its employees and agents under the theory of Respondeat Superior. The negligent acts of the employees and agents of Bell were a proximate cause of Plaintiffs' injuries. These torts were committed while the employees and agents were acting within their scope of employment with Bell – that is, the acts were within the employees' or agents' general authority, in furtherance of Bell's business, and for the accomplishment of the object for which the employees and agents were hired.

## V. JURY DEMAND

50. Pursuant to Fed. R. Civ. Pro. 38(b), Plaintiffs demand a trial by jury.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Candice Leigh Stoxreiter, Individually and as Guardian of Nate Gabriel Stoxreiter and Taye Hope Stoxreiter, Minor Children, and Arthur Channon as Executor of the Estate of Mark Stoxreiter request that Defendant Bell be cited to appear and answer herein, and, after due process of law, Plaintiffs have judgment against said Defendant for all damages, genera, for wrongful death action, for a survival action and/or applicable law, including, but not limited to, loss of past and future earnings, loss of net accumulations, loss of services, loss of care, loss of comfort, loss of support, loss of inheritance, loss of nurture, loss of guidance, loss of companionship, pain, suffering and mental anguish, and funeral and burial expenses. Plaintiffs also pray for affirmative relief, pre-judgment interest, post-judgment interest, attorney's fees, expert fees, costs of suit, and such other and further relief, both general and special, in law and in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

By:/s/ *Manuel E. Solis*
Manuel E. Solis
Texas Bar No. 18826790
Email: msolis@lawsolis.com
LAW OFFICES OF MANUEL SOLIS, PC
6657 Navigation Blvd.
Houston, TX 77011
Phone: (713) 277-7838
Fax: (281) 377-3924

ATTORNEY FOR PLAINTIFFS